STATE OF FLORIDA, ex rel. J. TOM WATSON, Attorney General, and FRONTON EXHIBITION COMPANY, a Florida corporation, v. CITY OF MIAMI, a municipal corporation under the laws of the State of Florida, and in the County of Dade.

15 So. (2nd) 481             June Term, 1943
November 9, 1943               En Banc

S. P. Robineau, L. S. Julian, Frank B. Dowling and Shutts, Bowen, Simmons, Prevatt & Julian, for appellants.

J. W. Watson, Jr., and Murrell & Malone, for appellee.

SEBRING, J.:

Quo warranto proceedings were instituted in the Circuit Court of Dade County to oust the City of Miami from exercising the functions, privileges, powers and franchises of a municipality over certain lands claimed to have been brought within the corporate limits by Chapter 21393, Special Laws of Florida, 1941. After a trial on the merits judgment was entered in favor of the City. The relators appealed from the judgment. The appeal involves the validity of the statute.

It is contended that Chapter 21393 is unconstitutional and void, on grounds that will be presently considered.

It is conceded that the City of Miami, by and through its assistant city attorney, caused to be published a notice of the City's intention to apply to the Legislature for the passage of a contemplated law to extend the corporate limits. The notice appeared in the April 27, 1941, issue of The Miami Herald—a newspaper of general circulation published in Dade County. This was a day at least thirty days prior to the introduction of the disputed bill into the Legislature. The published notice specifically described the lands to be taken into the City. The lands thus to be annexed (according to the newspaper notice) included property upon which the appellant, Fronton Exhibition Company, conducted and operated a fronton for the exhibition of a game called jai-alai; certain property upon which Flagler Amusement Co., Inc., another corporation, operated a dog racing plant; a small area of the residential property; and a tract of land upon which was situated a golf course.

On May 29, 1941, a bill to enlarge the corporate limits of the City was introduced in the House of Representatives of the State Legislature as House Bill 1740. In due course the bill passed both Houses of the Legislature, was signed by the Governor, and was filed with the Secretary of State as Chapter 21393, Special Laws of Florida, 1941. Attached to the bill at the time of its introduction, and accompanying it through both Houses of the Legislature, was the notice referred to above, which had been published in The Miami Herald on April 27, 1941.

The first question for consideration is whether the publication of a notice to apply to the Legislature for the passage of a local bill to extend the corporate limits of a municipality to include specifically and definitely described land is a sufficient notice of intention to apply for the passage of a local bill to extend such corporate limits to include only a portion of said land. This question arises by reason of the fact that Chapter 21393, as introduced and finally passed, did not embrace all of the properties specifically described in the published notice; the tracts of land comprising the golf course

and the residential area being omitted therefrom. It is claimed that because of this omission, no such notice as is contemplated by Section 21 of Article III of the Constitution of Florida as a condition precedent to the passage of special or local legislation, has been given.

Section 21 of Article III of the Constitution requires that notice of intention to apply to Legislature for the passage of a special or local bill shall be published in the manner provided by law, where the matter or thing to be affected may be situated, at least thirty days prior to the introduction into the Legislature of any such bill. See Section 21, Article III, Constitution of Florida, as amended in 1938. But we find nothing in that Section, or in its implementing statute (Secs. 11.02-11.04, Florida Statutes, 1941) that precludes the Legislature from doing that which they have done here. These constitutional and statutory provisions were never intended to curtail the lawmaking power of the Legislature, or to take away from that lawmaking body its legislative discretion to determine the contents of its own enactments, once the required published notice has been given. So long as such laws as are finally enacted accord in substance and purpose and are germane to and within the scope of the subject-matter of the published notice, the organic provision, in this particular, has been complied with. The prime purpose of the constitutional requirement that notice be given in such instances is to apprise persons directly interested in the matter or thing to be affected of the nature and substance of the bill, so that such enactments, or the essential substance thereof, may be contested, if that is desired. When the notice is sufficient to accomplish that purpose the mandate of the organic provision has been satisfied. See State ex rel. Landis, Att'y. Gen. v. Reardon, et al., 114 Fla. 755, 154 So. 868.

In the instant case newspaper notice was given to the public of the City's intention to apply to the 1941 session of the Legislature for the passage of a local bill to extend and enlarge the corporate limits of the City of Miami. The notice specifically described the territory sought to be annexed. This notice was published in The Miami Herald on April 27, 1941—a date at least thirty days prior to the introduction of

House Bill 1740 into the Legislature. The substance and purpose of House Bill 1740, as introduced and passed, comported with the notice given in all particulars, except as to the quantum of property to be taken into the municipality. It gave the City jurisdiction over the property embraced in said extension, and prescribed its liability for municipal taxation. The appellant's property was described both in the notice and in the bill as introduced and enacted. The appellant was thereby put on notice that its property might be included in such annexation to the City of Miami as might thereafter be made by the 1941 session of the Legislature. We find no such variance between the substance of the notice given, and the Act as finally passed, as will vitiate Chapter 21393, Special Laws of Florida 1941.

It is next argued that Chapter 21393, Special Laws 1941, is invalid because of the fact that the affidavit of proof of publication of notice that apparently accompanied the bill when it was first introduced in the House of Representatives on May 29, 1941, and that was spread in full on the House Journal, is not now filed and preserved with the original bill and a true copy of the published notice, in the office of the Secretary of State, as required by Section 11.03 Florida Statutes 1941.

The Journal entry of the introduction of House Bill 1740 is shown in the 1941 Journal of the House of Representatives at page 1403. It recites the fact that the bill, when first introduced, had attached to it affidavit of proof of publication. The affidavit apparently referred to is entered in full upon the journal. This affidavit appears to have been made by one Russell W. Houston and to have been sworn to before one Louise Muhleman, as notary public, on May 27, 1941. The Journal entry likewise contains a legislative finding "that the notice and evidence thereof required by Section 21 of Article III of the Constitution, has been established in this Legislature."

The particular affidavit of proof of publication executed by Houston, and copied in full in the legislative Journal, is not now to be found in the files of the Secretary of State. There does appear there, however, another affidavit of proof

of publication, in entirely different form, made by the said Russell W. Houston and sworn to before Louise Muhleman, as notary public, on May 27, 1941; and likewise an affidavit of proof of publication executed by one Anita Reece, and sworn to before one I. M. Dunne, as notary public, on May 27, 1941. (Both affidavits refer to and identify the notice that was published in The Miami Herald on April 27, 1941.) Both are attached to the original bill and the copy of the newspaper notice now on file with the Secretary of State.

The parties have not accounted for the absence from the files of the Secretary of State of the affidavit of proof of publication that appeared in the legislative journal; and we make no effort to do so. It is evident from the transcript of record before us that this affidavit was never, in fact, delivered to the Secretary of State for preservation. It may be that three affidavits were attached to House Bill 1740, and the newspaper notice, at the time the bill was introduced into the Legislature on May 27, 1941; and that through mistake or error only the two affidavits now on file in the office of the Secretary of State were delivered there for safekeeping. We make no pretense of knowing whether this is true or not; although there is no evidence in the record before us to the contrary. But be that as it may, it is entirely clear that the notice, a true copy of which is now attached to the original bill on file with the Secretary of State, was duly published in the manner provided by law at least thirty days prior to the introduction of House Bill 1740 into the Legislature. All interested persons were thereby put on notice of the legislation proposed to be presented to the 1941 legislative session. It seems, therefore, that the prime purpose contemplated by Section 21 of Article III of the Florida Constitution has been accomplished. The presumption is that the fact of publication of the notice as provided by law was duly established by proper evidence at the time of the introduction of House Bill 1740 into the Legislature, else the House of Representatives would not have made its legislative finding that organic law had been substantially complied with as a condition precedent to the passage of House Bill 1740. The affidavits now on file with the Secretary of State would be amply sufficient

to support such finding. Under these circumstances we find no good reason to strike down the law, on the ground raised.

It is finally contended by the appellant that because of its peculiar location and nature the property brought into the City can receive no benefits or advantages from the City; that its inclusion is not necessary for the normal, methodical, or incidental growth of the City; and that its attempted inclusion therein was for revenue purposes only, without commensurate compensatory benefits or advantages to the property owners. This question was squarely presented to the trial judge by the pleadings. Testimony was taken on the issue. It was shown that the annexed territory was within the City limits from 1925 to 1931. In 1931 they were excluded. At the time of the passage of Chapter 21393, the lands belonging to the Fronton Exhibition Company adjoined and were contiguous to lands within the City. At the same time, the lands of West Flagler Amusement Co., Inc., were separated from City property only by a public road; and this road was included in the bill as enacted. Much testimony was also taken on the question of the necessity for police and fire protection, and of the burden that had been placed upon the municipality for traffic control because of great throngs of people using the City streets to get to and from the jai-alai games and the dog races. Although the evidence was conflicting, there was ample evidence to sustain the judgment of the trial judge, who had the witnesses before him.

All other questions raised on this appeal have been duly considered and are found to be without merit.

The opinion of the Court filed herein on August 3, 1943, is now withdrawn and held for naught and ordered to be not published because of apparent conflicts in statement of facts, as to which this opinion takes precedence.

There were certain misstatements of fact in the former opinion rendered herein which were brought to our attention in a petition for rehearing. The petition for rehearing is granted for the purpose of correcting such misstatements of fact. They having now been corrected, the petition for rehearing in other respects is denied.

Regardless of such apparent conflicts in statements of facts our judgment heretofore rendered is, nevertheless, now adhered to, and the judgment of the lower court is now affirmed.

It is so ordered.

BUFORD, C. J., TERRELL, BROWN, CHAPMAN, THOMAS and ADAMS, JJ., concur.