## HUGHES v. SHELBY, Sheriff of Escambia County, et al.
### No. 42192.

Circuit Court, Escambia County.

February 10, 1960.

John M. Coe, Coe & Coe, Pensacola, for plaintiff.

Richard H. Merritt, Merritt, Anderson, Jackson & Henderson, Pensacola, for defendants.

ERNEST E. MÁSON, Circuit Judge.

This is a suit by a citizen taxpayer of Escambia County to enjoin the alleged unauthorized expenditure of county funds. The suit is against the sheriff of the county, the chairman of the board of county commissioners, the clerk of the circuit court in his capacity as county treasurer, and against two deputy sheriffs, the alleged proposed recipients of said funds.

It is alleged in the complaint that prior to the passage of chapter 59-1266, Laws of Florida, the two deputy sheriffs were members of the classified civil service of the county and that any increase in compensation of such deputies requires the approval of the civil service board as provided in section 16 of chapter 27537, Laws of Florida, as amended, which is the law dividing all employees of the county into classified and unclassified categories; that the defendant sheriff sought to secure the removal of the two defendant deputies from the classified civil service by securing the passage of a local or special law which, if valid and constitutional, has the effect of removing them from such classified civil service and from under the control of said board so that the defendant sheriff could in his discretion increase their compensation without the necessity of civil service board approval; that after the enactment of said alleged invalid local law the defendant sheriff purported to remove said deputies from the control of said board and secured the consent of the board of county commissioners to an increase in pay of said deputies, along with other employees allegedly wrongfully so removed from the classified service by virtue of said local law, of $10 per month, beginning October 1, 1959; that the defendant Caro as chairman of the board of county commissioners and the defendant Bell as ex officio county treasurer relying upon said local law threaten to sign and countersign warrants upon the public treasury of the county for such increased salaries, and thereby threaten unlawfully to divert and disburse and pay out such funds of the county to the detriment of the public treasury and the rights of the plaintiff as a citizen taxpayer.

It is further alleged in the complaint that the 1959 local law (chapter 59-1266) is void and of no effect because it was improperly enacted. It is claimed that the notice of intention to apply to the legislature for the enactment of said law was insufficient in that it did not state the substance of the law as it was introduced into and finally enacted by the legislature.

The several defendants with the exception of the deputies have filed answers. The deputies defaulted and decrees pro confesso have been entered against them.

The defendant Caro in effect answers that the Act attacked appears upon its face to be valid and admits that the board of county commissioners increased the salaries as alleged. The defendant Bell states that he is not sufficiently advised as to the validity of the local law in question, denies that he intends to divert or disburse public funds unlawfully and welcomes a determination of the legal effect of the said law by this court. The state attorney has filed an

answer as required of him when the constitutionality of an Act of the legislature is attacked and by his answer has cast the burden upon the plaintiff to establish the invalidity of the Act in question. The answer of the sheriff raises the issues to be resolved by the court.

The two issues raised by the pleadings herein are — (1) the right of the plaintiff to bring this suit, and (2) the validity of the Special Act (chapter 59-1266) under the provisions of which the defendant deputies' pay is proposed to be increased.

As to the first issue the parties have stipulated that the plaintiff is a citizen and taxpayer of Escambia County. As such he is authorized to bring the suit, for the principle that a taxpaying citizen may enjoin an unauthorized expenditure of public funds is well settled in this jurisdiction. Barrow v. Smith (Fla.), 158 So. 818.

The second issue is not so easily resolved. The question involves the sufficiency of the notice of intention to apply for the legislation attacked when tested by the provisions of article 3, section 21 of the Florida constitution and of chapter 11.02, Florida Statutes. The constitutional provision requires that no local or special bill shall be passed by the legislature unless notice of intention to apply therefor shall have been published in the manner provided by law where the matter or thing to be affected may be situated. The statutory provision fixing the manner of publication of such notice commands that the notice shall state the substance of the contemplated law.

The notice published in this case provided that application would be made to the 1959 regular session of the Florida legislature for the enactment of a special or local law —"further amending Chapter 27537, Laws of Florida, as amended, so as further to define and regulate the rights, powers and duties of appointing authorities and of the Civil Service Board of Escambia County, and so as further to define and regulate the rights and privileges of employees who are or may become members of the classified service under said chapter as amended." The special law passed pursuant to this notice proposes to accomplish two things, as set out in two sections. The first section proposes to add a new sub-paragraph (h) to section 3 of chapter 27537, the original civil service law of the county, as amended by chapter 57-1305. Section 3 of the civil service law is the section that defines the membership of the classified and unclassified services of county employment. The law now being attacked extends the membership of the unclassified services by including in it certain employees of the sheriff, namely —"department heads, officers in charge of watches, and the private secretary

of the sheriff, whether deputy sheriffs or not." It is admitted that the two defendant deputies fall within the category of employees thus sought to be removed from the classified service. There is a provision of the civil service law which requires that any increase in compensation of a member of the classified service must be approved by the civil service board before it becomes effective. If the law under attack be valid then the defendant deputies are not members of the classified service and the defendant sheriff as employing authority may increase their compensation without civil service board approval; if the law be invalid, they are members still of the classified service and the attempt of the sheriff to increase their pay without board approval is nugatory and the board of county commissioners is without power to approve any such increase and the defendants Bell and Caro would be without authority to sign any warrants for such increase.

The second section of the Act in question proposes to authorize the sheriff of Escambia County to hire special deputies for a limited time not in excess of 60 days in case of serious emergencies created by strike, riot, flood or fire, and provides that such special deputies shall not be included in the classified civil service of the county. Whether the notice under attack is sufficient predicate for the enactment of this provision of chapter 59-1266 and whether such section of the law is thus valid and constitutional it is not necessary for the court to determine in this proceeding, for no proposed action by the sheriff or anyone else under this section is under attack herein. Neither is it necessary for the determination of the question in controversy to pass upon the intent of the legislature as to the effectiveness of this section of the Act in the event the first section is declared to be valid or invalid. The court, therefore, expressly confines its determination of the issue solely as it involves section one of the Act in question.

We come now to the question as to whether section one of the Act in question is valid and constitutional. The determination of this question depends upon whether the notice of intention upon which the Act is predicated is sufficient to comply with the constitutional mandate contained in section 21 of article 3, as implemented by chapter 11.02, Florida Statutes. The purpose of the constitutional requirement that notice be given in such instances as the one involved here, as stated by our Supreme Court —"is to apprise persons directly interested in the matter or thing to be affected of the nature and substance of the bill, so that such enactments, or the essential substance thereof, may be contested, if that is desired." State v. City of Miami, 15 So. 2d 481. When the notice is sufficient to accomplish that purpose the mandate of the organic

provision has been satisfied. State ex rel. Landis, Atty. Gen. v. Reardon, 154 So. 868. These constitutional and statutory provisions are not intended to curtail the lawmaking power of the legislature, or to take away its legislative discretion to determine the contents of its own enactments, once the required published notice has been given. And the Supreme Court has repeatedly held that so long as such laws as are finally enacted accord in substance and purpose and are germane to and within the scope of the subject-matter of the published notice, the organic provision, in this particular, has been complied with. State v. City of Miami, supra.

It is suggested in the brief of counsel for the defendants sheriff and chairman of the board of county commissioners that the legislature has determined in its enactment of the Act in question that the requirements of the constitution and of chapter 11.02 have been met and that the court has no authority —"to go behind the findings of the legislature." They cite as authority therefor the fairly recent case of City of Hialeah v. Pfaffendorf, 90 So. 2d 596. There is language in that opinion which seems to hold that if the legislature by appropriate journal entries determines that the constitutional and statutory requirements as to notice have been complied with the court should not —"take issue with the legislative branch of government on this point." However, this language is clearly obiter dictum for the court in that opinion had already decided that the notice in question was sufficient predicate upon which to bottom the first enactment under attack. Furthermore, whatever authority such language gives to support defendants' position in this respect is weakened by the fact that in the same opinion the writer later on, in holding that a subsequently enacted local bill could not be bottomed upon the same notice, stated that it was "obvious that while the journals contain a recitation that notice was given of the intention to apply for passage of this Act (the second one in question), no such notice was given." So in declaring the second Act invalid for lack of notice of intention to apply therefor the court necessarily went behind the recitation of the journals to inquire whether *in fact* such a notice was given. But even if it should be held that the legislature has the power by appropriate journal entries to foreclose inquiry into the question of the fact of the giving of the notice and of its sufficiency, an examination of the journal entries as they apply to the introduction and passage of chapter 59-1266 do not disclose that the legislature did by any such journal entry determine the sufficiency of the notice in question. The court may take judicial notice of entries in the journals of the legislature. State v. Simpson, 166 So. 227. An examination of the journal of the senate, the body into which the bill in question was

introduced, Senate Journal, page 1145, under date of June 1, 1959, discloses that the legislature determined that proof of publication of notice was attached to the bill when it was introduced and that evidence that such notice had been published was established by the senate as required by section 21, article III of the constitution— but such journal entry does not purport to determine that the notice was sufficient as stating "the substance of the contemplated law," as required by chapter 11.02, Florida Statutes. So, it is the view of the court that it cannot avoid passing upon the sufficiency of the notice in question as a predicate for the valid enactment of that portion of chapter 59-1266 now under attack, however tempted it may be to have this "cup" removed from it, by the simple expedient of declaring that the question has been irrevocably resolved by the legislature in the enactment of the law.

We thus turn to the notice of intention upon which chapter 59-1266 is bottomed to determine whether it gives notice of "the substance" of what is sought to be accomplished by section 1 of the local law as is required by the constitution and the implementing General Act, viz. section 11.02. First, however, let us see what is sought to be accomplished by this section of the local law under attack. This section 1 attempts to amend section 3 of the original Civil Service Law (chapter 27537, Acts of 1951) by adding a new subsection, viz. sub-section (h). Section 3 is the section which classifies county employees, stating which individuals and groups shall be under the classified or merit system and which shall be unclassified and thereby because of other sections of the law not entitled to civil service protection. Before the enactment of the law now under attack all employees, including deputy sheriffs of the sheriff of the county were encompassed by force of this section 3 in the classified service. Sub-section (h), added to section 3 by the law under attack, follows —

"(h) Department heads, officers in charge of watches, and the private secretary of the sheriff, in the Sheriff's Office of Escambia County, Florida, whether deputy sheriffs or not, shall be carried *in the unclassified service*." (Italics added.)

and has the effect of removing from the classified civil service the positions named therein. It is conceded that the defendant deputies are within the scope of this sub-section (h)—and that if it be valid they are no longer members of the classified civil service.

If the notice of intention upon which this enactment is predicated states the substance of this enactment — that is to say, if it has the required effect of apprising "persons directly interested in the

matter or thing to be affected of the nature and substance" of the proposed bill, so that its introduction into the legislature or its enactment by the legislature, may be contested by such persons, if they desire — then the notice is sufficient. Otherwise not.

The notice puts the world on notice that application will be made at the 1959 legislature for a local law to amend the existing Civil Service Law so as further — (1) to define and regulate the rights, powers, and duties of appointing authorities and of the civil service board of Escambia County, and so as further — (2) to define and regulate the rights and privileges of employees who are or may become members of the classified service under said chapter as amended.

A reasonable person reading this notice would conclude — (1) that there was already a law defining and regulating the rights, powers and duties of appointing authorities and of the civil service board of Escambia County, (2) that there already was a law regulating the rights and privileges of employees who are or who may hereafter become members of the classified service under that law, and (3) that it was proposed to amend the civil service law in two respects, viz, to define further the rights, powers, and duties of appointing authorities and of the civil service board of the county, and to define further the rights and privileges of members of the classified service.

The problem is, does this language, or any part of it, justify the fair inference that it is proposed to take employees out of the classified service and place them in the unclassified service which, of course, is the clear impact of section 1 of chapter 59-1266? Would a civil service employee, for instance, by reading this notice be put on guard against the enactment of a law which would deprive him of his civil service status, or would he have reason to believe that the only purpose of the law was to define the law as it applied to the powers and duties of appointing authorities and of the civil service board in their dealings and relations with and to existing members, or members to be, of the Escambia County Civil Service?

The court is of the opinion that a reasonable person reading this notice would not have cause to believe that it was contemplated to remove employees from the classified civil service of the county — therefore, that the notice does not meet the test of sufficiency declared by the Supreme Court as being fixed in the constitution and by provisions of section 11.02, Florida Statutes. The notice does not alert persons directly interested in the matter of the nature and substance of the bill which was introduced and passed so as to put them on guard against its passage if they desired to contest it.

It is, therefore, the judgment of the court that section 1 of chapter 59-1266 is for the reason stated unconstitutional and void and that all action taken under it is void and of no effect and that the plaintiff is entitled to the injunction prayed for in his complaint.

It is so ordered, and counsel for the plaintiff is directed to prepare an injunctive order carrying into effect the opinion and decree of the court herein expressed.