269 So.2d 355 (1972)
CITY OF NAPLES et al., Appellants,
v.
Jack R. MOON, Trustee, Appellee.
No. 41411.
Supreme Court of Florida.
October 11, 1972.
Rehearing Denied December 14, 1972.
*356 Charles K. Allan, City Atty., for appellants.
James W. Elkins, of Treadwell, Emerson & Elkins, Naples, for appellee.
CARLTON, Justice:
This is a direct appeal from a judgment of the Circuit Court, Collier County, that the following laws were unconstitutional: Laws 1968, ch. 68-94, creating the City of Naples Parking Authority; Laws 1969, ch. 69-1325, amending Ch. 68-94 and granting additional powers to the City of Naples Parking Authority; Laws 1969, ch. 69-1327, amending Ch. 68-94 and creating the Fifth Avenue Parking Tax District; and Laws 1970, ch. 70-820, amending Ch. 68-94 and altering the legal description of the Tax District. We reverse. Article V, Section 4(2), Florida Constitution, F.S.A.
The legislation in question was intended to revive and preserve a business district in the City of Naples by providing for improved parking facilities. Currently the district is sliding into economic decline, and inadequate parking has been assigned as the cause. The improvements are to be funded by the levy of special assessments against the property holders and businesses in the area, according to the benefits each would presumably derive.
Appellee is the owner of certain property allegedly within the boundaries of the District. In a declaratory judgment action brought to test the legality of a District assessment levied against his property, he contended that: Ch. 68-94 was improperly advertised, contrary to Article III, § 10, Florida Constitution; Ch. 69-1327 was improperly entitled, contrary to Article III, § 6, Florida Constitution; the Acts relating to the District imposed an ad valorem tax at a rate that was not uniform throughout the Tax District, contrary to Article VII, § 2, Florida Constitution; no millage rate for these ad valorem taxes was either authorized by law or approved by a vote of the electors, contrary to Article VII, § 9, Florida Constitution; if the Acts did constitute a special assessment, they failed to provide ascertainable guidelines for assessment, contrary to Article VII, § 1(a), Florida Constitution; finally, the Acts denied property holders within the District due process of law, contrary to Article I, § 9, Florida Constitution.
Under the facts of this case, four issues appear to be decisive: first, whether Ch. 68-94 was properly advertised; second, whether Ch. 69-1327 was properly entitled; third, whether the tax scheme envisioned is ad valorem in nature or a special assessment; fourth, whether discernable guidelines for determination of benefits exist.
In November 1967, the City of Naples advertised in a local newspaper that it intended to apply for passage of an Act amending the City Charter (Laws 1959, ch. 59-1598). The proposed amendment would empower the City to establish a Parking Authority as the agency responsible for supervision and control over parking in the City; the agency was to have powers commensurate with its task, including powers of eminent domain. The proposed act was submitted to the Legislature as an amendment, but in its wisdom the Legislature responded by passing a special act embracing all that was asked for in the proposed amendment. Thus, instead of amending the City Charter, the Legislature enacted Ch. 68-94.
Appellee contends that since the notice of intention referred to an amendment of the City Charter, and not a special act complete in itself, the special act was not advertised in accord with the mandate of Article III, § 10, Florida Constitution: "No special law shall be passed unless notice of intention to seek enactment thereof has been published in the manner provided by general law." Appellee further contends that since all the other special acts in contest *357 were passed as amendments to Ch. 68-94, they also are unconstitutional since they can have no independent legal significance.
We cannot agree with the appellee on this point. The essential question is whether notice was given that a parking authority would be established for the City of Naples by a special act. Whether the special act was actually passed in the form of a Charter amendment, or in the form of a self-contained enactment, would not be decisive unless the Charter contained provisions radically inconsistent with the Act as passed. Our review of the Charter does not suggest to us that any such inconsistencies exist.
We note also that Florida Statutes, Chapter 183, grants cities the power to control parking facilities.
As a final comment upon this issue, we quote from State ex rel. Watson v. City of Miami, 153 Fla. 653, 15 So.2d 481 (1943):
"These constitutional [reference here is to Article III, § 21 (1885), predecessor to Article III, § 10 of the current Constitution] and statutory provisions were never intended to curtail the lawmaking power of the Legislature, or to take away from that lawmaking body its legislative discretion to determine the contents of its own enactments, once the required published notice has been given. So long as such laws as are finally enacted accord in substance and purpose and are germane to and within the scope of the subject-matter of the published notice, the organic provision, in this particular, has been complied with. The prime purpose of the constitutional requirement that notice be given in such instances is to apprise persons directly interested in the matter or thing to be affected of the nature and substance of the bill, so that such enactments, or the essential substance thereof, may be contested, if that is desired." 153 Fla. at 656, 15 So.2d at 483.
The next issue of importance relates to Ch. 69-1327. The title of the act announced, in part, that it provided, "[F]or taxation of the improved properties benefited in accordance with the benefits received; ..." (Emphasis supplied.) In the body of the act, section 1 contained a number of amendments to Ch. 68-94, including the following:
"Section 21. For the purpose of paying the costs of acquisition, construction, maintenance, improvement and operation of parking facilities within the Fifth Avenue parking tax district, and such other costs as the commissioners deem necessary on account of said district, all real estate in the district benfited [sic] or to be benefited by parking facilities owned or maintained by the district shall be subject to the taxes provided for in this act, and the governing board is hereby authorized to impose annual taxes against the real property in the district benefited by the parking facilities. (Emphasis supplied.)
Note the difference between the wording emphasized in the title and the body of the act. Appellee contends that this difference constitutes a violation of Article III, § 6, Florida Constitution, which states in part: "Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title."
Appellants argue that this language difference is not sufficiently significant to nullify the act. They refer us to King Kole, Inc. v. Bryant, 178 So.2d 2 at 3, 4 (Fla. 1965), wherein we said:
"Over the years certain guidelines have evolved for testing the sufficiency of titles against the standard prescribed [in the constitution]... . The primary purpose of the requirements is to prevent `hodge-poge or log-rolling' legislation. Its object is to avoid surprise or fraud by fairly apprising the Legislature and the public of the subject of the legislation being enacted. [Citations omitted.] The Legislature is allowed a wide latitude in the enactment of laws, and the courts will strike down a title only when there is a plain case of *358 violating or ignoring the constitutional requirement. [Citations omitted.] The title is sufficient if it fairly gives such notice as will reasonably lead to inquiry into the body thereof."
We agree that the language difference is not fatal, but our holding is reached primarily on the narrow theory that all property in the Fifth Avenue parking district would be likely to be improved property. This being so, the title "fairly gives such notice as will reasonably lead to inquiry" into the body of the Act. Ordinarily, however, the distinction between "improved property" and "all real estate" or "real property" would be too significant to pass over.
The third issue for consideration is whether the tax scheme generally should be classified as ad valorem, or as a special assessment. The appellee presents a strong case in arguing that it is an ad valorem tax. He notes that: (1) the Notice of Legislation published relating to Ch. 69-1327 stated in part: "The purpose of this Legislation is to grant necessary powers to the City of Naples Parking Authority to levy an ad valorem tax on the above properties ... ."; (2) Section 21 of Ch. 69-1327 itself provides that, "[T]he governing board [of the tax district] is hereby authorized to impose annual taxes against the real property in the district benefited ... ."; (3) Section 24(1) of Ch. 69-1327 provides that the county assessor is to report assessed valuation of improved real property in the district, and the total sum of all assessments so reported is to be the assessed value of taxable property for the district; finally, (4) Section 24(2) of Ch. 69-1327 provides that on receipt of assessments the district shall determine the total amount of money to be raised by taxation, and shall determine the rate of taxation necessary when applied to the total assessed value of property in the district.
If considered solely in the manner presented by appellee, the above certainly suggests an ad valorem tax system. However, this selective presentation belies the context of the material cited. The Notice of Legislation goes on to state, "[W]hich tax will be lieved in proportion to the amount of floor space of each improved property, its relation to the certain parking lots acquired or to be acquired by the Parking Authority, and the amount of property presently provided by the property owners." Similarly, when Sections 21, and 24(1) and (2), are read in context with the rest of Ch. 69-1327, the viability of the scheme as a special assessment becomes apparent. It is true that ad valorem assessments are factors in the calculus; however, these assessments merely form a logical valuation base against which the special assessment benefits may be multiplied. This occurs only after those benefits have been independently measured and reduced to numerical factors in the case of each property-holder.
The final issue is this: If the levies imposed are special assessments, do discernable guidelines exist for the determination of benefits derived from the improvements? The answer is to be found in Section 1 of Ch. 69-1327, which contains the following amendment to Ch. 68-94:
"Section 22. (1) As soon as convenient after the creation of said district, the governing board shall determine maximum annual benefits on a relative basis to be derived from the parking facilities of the district. In all respects the benefits found for district taxing purposes shall be those resulting from the works of the district only.
"(2) The maximum annual benefits as determined by the board shall take into account the value of the property benefited, relative floor space of each improved property, its kind, susceptibility to improvement, and the maximum annual benefits to be conferred thereon by the works of the district." (Emphasis supplied.)
The factors to be taken into account by the Board which are listed above are generally self-explanatory; only the two emphasized *359 items bear elaboration by way of example. The "kind" of property benefited and "the maximum annual benefits to be conferred thereon" are interrelated. An apartment house providing tenants with parking would benefit less than an apartment house without furnished parking. A shopping center providing its customers with parking areas would benefit less than businesses without parking facilities. In the determination of assessment, all the distinctions recognized in the guidelines must be observed with utmost caution, lest the businesses already providing parking facilities be penalized for their foresight. We recognize, however, that all business properties in the district will in some measure profit from a viable business district.
The judgment under appeal is reversed, and this cause is remanded to the Circuit Court, Collier County, for further proceedings not inconsistent with this opinion.
It is so ordered.
ROBERTS, C.J., and ERVIN, ADKINS, BOYD, McCAIN and DEKLE, JJ., concur.